UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-00083-MOC
(1:16-cr-00006-MOC-WCM-1)

| | |
|---|---|
| BENJAMIN ERNEST JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.      BACKGROUND**

Between 2011 and 2014, Benjamin Earnest Johnson ("Petitioner") was on active duty with the United States Navy and stationed in Asheville, North Carolina. [CR Doc. 26 at ¶¶ 5, 11: Presentence Investigation Report (PSR); CR Doc. 16 at ¶ 1: Factual Basis]. His duties included recruiting high school age students in Western North Carolina, including at North Buncombe High School in Buncombe County. [CR Doc. 16 at ¶ 1]. Sometime during the fall of 2013, while serving as a recruiter, Petitioner met a 15-year-old girl (CV1) who was a student at North Buncombe High School and enrolled in the school's Naval Junior Reserve Officer Training Corps

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 1:19-cv-0083-MOC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 1:16-cr-00006-MOC-WCM-1.

(NJROTC).  [Id.].  He began communicating with CV1 through the instant messaging cell phone applications Snapchat and Kik Messenger, both of which operate through the Internet.  [Id.].

By February 2014, Petitioner's communications with CV1 became sexual in nature.  [Id.].  In one message, for example, Petitioner sent CV1 a photograph of his penis and told CV1 it was "her turn," requesting a picture of her "playing with" or "touching herself."  [Id. at 2].  Two minutes later, CV1 sent Petitioner a picture of her nude pubic area with two fingers inserted into her vagina.  [Id.].  Petitioner then asked CV1 to send him a picture of her "boobs."  CV1 complied, sending Petitioner a topless picture of herself and one depicting her in only her bra.  [Id.].  Petitioner responded by sending Petitioner a picture of his erect penis.  [Id.].

The next day, Petitioner sent CV1 another picture of his erect penis and asked her to take additional sexually explicit photographs of herself, including a picture of her "wet" vagina, and to send them to him.  [Id.].  CV1 again complied, taking a sexually explicit photograph of her vagina and sending it to Petitioner.  [Id.].  The next morning Petitioner sent yet another picture of his erect penis to CV1.  [Id.].  Petitioner also told CV1 that he wanted to have sexual intercourse with her and that he wanted to spank her and bite her neck.  [CR Doc. 26 at ¶ 16].  Petitioner and CV1 had multiple conversations regarding sexual intercourse.  [Id.].

Also, in February 2014, Petitioner picked CV1 up from school on two occasions.  [Id.].  On the first occasion. Petitioner drove CV1 home, stopping along the way at a stoplight and kissing her.  [Id.].  On the second occasion, Petitioner drove CV1 to a park and kissed her, rubbed her thigh, and bit her neck.  [Id.].

Petitioner engaged in a sexually explicit relationship with another young girl (CV2) whom he met in 2011 when she was a freshman in the NJROTC program at North Buncombe High School.  [CR Doc. 16 at ¶ 7].  Petitioner maintained a relationship with her until March of 2014.

2

[Id. at ¶¶ 7-8]. After CV2 transferred to another high school in the area, she became Facebook friends with Petitioner and then began chatting with him on Snapchat, complimenting and flattering her. [Id. at ¶ 8]. Petitioner eventually asked CV2 to "send [him] some sexy pics." She sent him two or three pictures of her vagina. [Id.]. Petitioner sent CV2 photographs of his penis, stating that he was "lying in [his] bed thinking of [her]." [Id.]

Detective Tony Johnson with the Asheville Police Department examined Petitioner's cell phones and cell phones belonging to CV1 and CV2 in the March and April of 2016. [Id. at ¶ 9]. On Petitioner's phone, Detective Johnson found four child pornography images of CV1, two child-pornography images of CV2, and numerous images of Petitioner's exposed penis. [Id.]. Detective Johnson also found a chat between Petitioner and CV1 in which they discussed kissing each other and a chat between Petitioner and CV2 in which they discussed Petitioner picking CV2 up from school so that they could spend time alone together. [Id.]. Both phones seized from CV1 and CV2 contained images of Petitioner. [Id.].

On January 1, 2016, Petitioner was charged in a Bill of Indictment with one count of enticing a minor to engage in sexually explicit conduct for the purpose of producing child pornography, 18 U.S.C. § 2251(a) (Count One); one count of enticing a minor to engage in sexual activities for which a person could be charged with criminal offenses, 18 U.S.C. § 2422(b) (Count Two); one count of receipt of child pornography, 18 U.S.C. § 2252A(a)(2)(A) (Count Three); and one count of possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B) (Count Four). [CR Doc. 1: Bill of Indictment]. The parties reach a plea agreement pursuant to which Petitioner agreed to plead guilty to Count Two and the Government agreed to dismiss Counts One, Three, and Four. [CR Doc. 15 at 1: Plea Agreement]. The plea agreement also set forth the 10-year mandatory minimum penalty for Count Two, 18 U.S.C. § 3583(k). [Id. at 1-2]. "[I]n exchange for the

concessions made by the United States," Petitioner waived his right to contest his conviction and sentence on direct appeal or in any post-conviction proceedings, except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 18-19]. A factual basis supporting Petitioner's guilty plea, consistent with the Court's factual recitation above, was also filed. [CR Doc. 16]. Petitioner reserved the right to object to the factual basis as it related to CV2. [Id. at 2 n.2].

Petitioner pleaded guilty in accordance with the plea agreement on May 11, 2018, at which time the Magistrate Judge found that Petitioner's guilty plea was knowing and voluntary. [CR Doc. 17: Acceptance and Entry of Guilty Plea]. During the plea colloquy, Petitioner affirmed, among other things, that he understood the charge to which he was pleading guilty and any maximum and minimum penalties. [Id. at ¶¶ 9-10]. After the prosecutor summarized the terms of the plea agreement, Petitioner affirmed that he understood that his right to challenge his conviction and sentence on appeal or on post-conviction review had been "expressly waived in the plea agreement." [Id. at ¶¶ 27-28].

Before Petitioner's sentencing, a probation officer prepared a PSR. [CR Doc. 26]. The probation officer recommended a base offense level of 28; a two-level increased based on Petitioner's use of a computer service to entice a minor to engage in prohibited sexual activity, U.S.S.G. §2G1.3(b)(3)(B); a cross reference to U.S.S.G. §2G1.3(c)(1) based on Petitioner having caused a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and a five-level increase based on Petitioner's having engaged in a pattern of activity involving prohibited sexual conduct, resulting in a Total Offense Level (TOL) of 40 after taking Petitioner's acceptance of responsibility into account. [Id. at ¶¶ 21-23, 28-31]. Together with Petitioner's Criminal History Category of I, this yielded a guidelines range between

292 and 365 months in prison. [Id. at ¶ 54]. Petitioner objected to the statements in the PSR related to CV2, including that he solicited photographs from her. [Id. at 16-17: Addendum to PSR; CR Doc. 25: Objections to PSR]. Petitioner also objected to the offense level calculations, contending that the TOL applicable to his offense conduct was 31, resulting in an advisory range between 108 and 135 months. [CR Doc. 25 at 2-5].

In his Sentencing Memorandum, Petitioner requested a downward variance to a sentence of a term of imprisonment of 120 months, which is the mandatory minimum sentence for his offense. [CR Doc. 31]. In support of this sentence, Petitioner argued that the case involved only four images; that the minor was 15-years old and, although one incident of kissing was alleged, he had no direct physical contact with the minor; there was no evidence that he shared any images from the minor; and the two had acted in a "semi-relationship fashion." [Id. at 2]. Petitioner also argued that his history and characteristics as a Navy veteran with 20 commendations, who had earned two degrees since the incident, and who was married with four children, and had a strong support system, supported a downward variance. [Id. at 3]. Petitioner noted that he had never been in legal trouble before and was facing a mandatory minimum ten-year sentence, at least five years of supervised released, and monitoring as a sex offender. [Id. at 3-4].

In the Memorandum, Petitioner's counsel noted that, although "[t]his Court has sentenced numerous defendants under Chapter 117 (Transportation for Illegal Sexual Activity and Related Crimes)[,]" … "counsel was not able to find a case that fits the facts in the present case." [Id. at 4]. Counsel offered that "[t]he closest charge and fact comparison available seems to be the case of *US v. Martin Meggett* in 3:15-cr-0089," where the defendant was also charged with coercion and enticement of a minor, but pleaded guilty to sex trafficking a child by force, fraud, or coercion for persuading a 17-year old to engage in prostitution. [Id.]. The defendant in Meggett was

sentenced to 120 months in prison. Counsel argued that Meggett involved "far worse" crime and Petitioner did not deserve to be punished any more harshly than that defendant, thus calling for a variance downward for the guideline range. [Id.]. Finally, counsel argued that the Court should consider collateral consequences in sentencing Petitioner, including the fact of Petitioner's termination from the Navy just three weeks shy of his retirement and the loss of lifetime benefits for his family. [Id. at 4-5].

The Government, on the other hand, asked the Court not to sentence Petitioner to a term of imprisonment less than 15 years, noting that Petitioner's offense conduct "was not isolated to a single child [or attributable] to a single thoughtless moment of indiscretion." [CR Doc. 32 at 2: Govt. Sentencing Memorandum]. The Government too conceded that this Court "ha[d] not been presented with another case substantially similar to the one at bar." [Id. at 3]. The Government pointed to United States v. Jason Michael Brown, 3:14-cr-167, where this Court sentenced a defendant who had "traded images of child pornography, possessed hundreds of thousands images of child pornography, [ ] used the child pornography to coach a very young child[,] and commit[ed] an egregious contact offense" to 240 months in prison. [Id.]. The Government noted that while the offense conduct in Brown was "very dissimilar" to Petitioner's, it serves as "a point of comparison" and asked "that if the Court chooses to sentence below the guidelines, then the sentence should not be less than 180 months." [Id.].

Petitioner was sentenced on November 8, 2016. At sentencing, Petitioner, through counsel, noted his agreement with the factual basis as set forth in the PSR. [CR Doc. 45 at 4-5: Sentencing Tr.]. Petitioner further explained that he was withdrawing most of his objections to the PSR, including objections to the factual basis as it relates to CV2, and that based "upon discovery review there [was] ample evidence to support the statements in the factual basis." [Id. at 6-7]. Petitioner,

6

however, maintained his objection to the five-level enhancement under §4B1.5(b)(1), arguing that the enhancement was not mandatory, but only "allow[ed]" under the guideline.[2] [Id. at 7-11]. Petitioner's counsel also addressed comparable sentences, stating "Your Honor, I did try to look for – and I had Federal Defender's Office help me, for cases similar to this one that this Court sentenced … Quite frankly, I could not find one. There is not a similar fact and circumstance that this court has seen." [Id. at 27]. Counsel argued that "because [this case] is so unique, and because we don't see cases like this in federal court every day, low number of images like this, there was no sexual contact … it does deserve the minimum, the statutory minimum of 120 months." [Id. at 31].

The Court overruled Petitioner's objection and found that the guidelines advised a range between 292 and 365 months in prison. [Id. at 5-16]. In considering sentencing factors, the Court noted, "What I'm trying to do is put all this in perspective, because we want to avoid sentencing disparity. I try to definitely do it in my cases. I can't listen to New York or Massachusetts because they are not helpful to me, but neither is the Southern District of Georgia." [Id. at 36]. The Court

---

[2] Section 4B1.5(b)(1) provides:

> (b) In any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
> (1) The offense level shall be **5** plus the offense level determined under Chapters Two and Three….

U.S.S.G. §4B1.5(b)(1). The Application Note for this provision provides that "[f]or purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor. Id., App. Note 4(B). "An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." Id. (emphasis added). Thus, it appears from a plain reading of this language that the five-level enhancement is not permissive, but rather that the Application Note clarifies that it may be applied despite having "occurred during the course of the instant offense." See id.

7

then found that "[t]his really is a direct sex crime, which has been aggravated by the fact that these pictures were passed back and forth." [Id. at 43]. The Court decided to vary downward from the guidelines to a TOL of 36, which yielded a range of 188 to 235 months. [Id. at 47]. In determining the appropriate sentence within that range, the Court noted that it "has not had anything exactly like this" and "[i]n comparing the Brown case to some other [before the Court], … this fits appropriately within that sentence." [Id.]. Ultimately, the Court sentenced Petitioner to a term of imprisonment of 204 months, noting that the sentence would have a strong deterrent effect, promote respect for the law, and protect the public. [Id. at 45-49].

Petitioner appealed. He argued that the factual basis was insufficient to support his conviction, that there was prosecutorial misconduct because the United States manipulated his sentence by taking the case from state prosecutors, that this Court improperly calculated his sentence, and that his sentence was substantively unreasonable. United States v. Johnson, 698 Fed. App'x 133 (4th Cir. 2017), cert. denied, 138 S. Ct. 1342 (2018). The Fourth Circuit found Petitioner's claim of prosecutorial misconduct as meritless and dismissed his remaining claims as barred by the waiver in his plea agreement. Id. at 134.

Petitioner timely filed the present motion to vacate, arguing that counsel provided ineffective assistance with respect to sentencing.[3] [CV Doc. 1]. Petitioner claims, specifically, as follows:

> Because I was a first time offender, with an exemplary armed services career history, and I shared only 2 photos of a sexual nature by text messaging with a high school girl, I asked for a downward variance at sentencing, which was warranted in order to avoid disparity in sentencing with other similarly situated defendants. My

---

[3] Petitioner had the assistance of an attorney in preparing his motion, but the attorney has not entered an appearance in this case. As such, Petitioner is deemed to be proceeding pro se. [See CV Doc. 1 at 13, 15-23].

8

> defense counsel failed to find and offer to the sentencing court the results of other similar federal cases.

[Id. at 4]. The Government responded to Petitioner's motion. [CV Doc. 3].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet

9

this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Here, Petitioner claims that he received ineffective assistance from his attorney because his attorney failed to find and present similar federal cases to the Court at sentencing to support a lower sentence to avoid unwarranted sentencing disparity. [CV Doc. 1 at 4]. In his supporting memorandum, Petitioner provides summaries of several cases he believes "could have and should have been offered to the court" at sentencing. [Id. at 19-22]. None of these cases are from the Western District of North Carolina or from the Fourth Circuit, for that matter. [See id.]. One of the cases involved a sentence imposed after the Court sentenced Petitioner. [Id. at 19]. The remaining cases involved receipt, accessing, possession, distribution, and traveling across state lines with the intent to engage in sexual conduct, rather than coercion and enticement under 18 U.S.C. § 2422. [Id. at 19-22].

On the other side, before and during sentencing, Petitioner's counsel cited a case involving more egregious conduct than Petitioner's for which the defendant received a 120-month sentence. Counsel attempted to find similar cases in this District, even enlisting the help of the Federal Public Defender's Office but was unable to find any other similar cases. Additionally, the Government

10

was also unable to find similar cases. [CR Doc. 32 at 3]. As such, rather than showing deficient performance, these facts support counsel's argument that Petitioner's case was unique. Furthermore, Petitioner's counsel achieved a sentence 88 months lower than the low end of the guidelines range for Petitioner. Petitioner, therefore, has failed to demonstrate that counsel's conduct was objectively unreasonable or fell below prevailing professional norms. See Strickland, 466 U.S. at 487-89.

Even if Petitioner had shown deficient performance, he has not and cannot show prejudice. Petitioner's argument relies on only one of many sentencing factors under 18 U.S.C. § 3553(a), avoiding unwarranted sentencing disparities. On this point, Petitioner points to no similar cases involving enticement or coercion of a minor, particularly under circumstances involving an adult military recruiter with contact to high school students through this position who engaged in such conduct with more than one minor and had physical contact with the victim more than once. Furthermore, and significantly, the Court specifically noted that it was not persuaded by out-of-district sentences. Accordingly, there is no reasonable probability that Petitioner would have received a lower sentence had his attorney argued the cases listed by Petitioner here, all of which are out of district and involve different conduct. As such, Petitioner cannot show a reasonable probability that, but for his counsel's performance, his sentence would have been lower. See Royal, 188 F.3d at 249.

In sum, the Court will deny Petitioner's claims for his failure to show that his counsel's performance was deficient or that he was prejudiced by counsel's conduct relative to sentencing. See Strickland, 466 U.S. at 687-88; Royal, 188 F.3d at 249.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: August 17, 2020

Max O. Cogburn Jr
United States District Judge